

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-15-00238-CV

IN RE OOIDA RISK RETENTION                    RELATORS
GROUP, INC., CERTAIN
UNDERWRITERS AT LLOYDS,
AND GEORGE ODOM

----------

ORIGINAL PROCEEDING
TRIAL COURT NO. C2013333

----------

## OPINION

----------

Relators OOIDA Risk Retention Group, Inc., Certain Underwriters at Lloyds, and George Odom seek a writ of mandamus to compel the trial court to vacate its order denying their motion to appoint an impartial umpire and to vacate its order denying their motion for summary judgment. For the reasons set out below, we conditionally grant relief on the order denying Relators' motion to appoint an impartial umpire but deny Relators' petition on the order denying their motion for summary judgment.

## Background

Ricky Lee Wells, the real party in interest, had commercial automobile insurance for his Peterbilt truck with Relators.[1] Condition 12 of the policy, entitled "Appraisal," provided:

> In case the Insured and Underwriters shall fail to agree as to the amount of loss or damage each shall on the written demand of either, select a competent and disinterested appraiser within fifteen (15) days of receipt of such written demand. The selected appraisers shall first attempt to agree between themselves on an agreed actual cash value, loss or damage taking into account the terms and conditions of the Policy. If the two appraisers fail to agree then they shall select a competent and impartial umpire, and failing for fifteen (15) days to agree upon such umpire, then on the request of the Insured or the Underwriters such umpire shall be selected by a judge of a court of record in the County and State in which the appraisal is pending. The appraisers shall then submit their differences only to the umpire. The award in writing of any two of the three parties involved (i.e. the two appraisers and the umpire) when filed with Underwriters, shall determine the sound actual cash value and the amount of loss or damage. Each appraiser shall be paid by the party selecting him and the expenses of the umpire shall be paid by the parties equally.

Wells's truck caught fire on March 4, 2013, and was damaged. Wells reported his claim on the same date. On March 28, 2013, a representative of Relators left Wells a telephone message that he was sending Wells a copy of Condition 12. Relators sent Wells a settlement offer on March 29, 2013, and, on April 5, 2013, sent him settlement paperwork that specifically mentioned

---

[1]The insurance policy was with Certain Underwriters at Lloyds, one of the Relators. For the sake of simplicity, when referring to any one of the Relators, we use the term "Relators."

compliance with Condition 12 and provided him with the full text of the appraisal clause.

On April 24, 2013, Wells's fiancée emailed Relators and asked them to send the paperwork for the settlement valuation of $21,000. The email exchanges between Relators and Wells's fiancée show that Relators were going to pay Wells $21,000 but were also going to subtract from that amount the truck's salvage value of $7,186. Wells's fiancée responded that they did not want to retain the truck for salvage but wanted, instead, the $21,000. Relators agreed, provided nothing had been removed or swapped from the truck. Wells's fiancée assured Relators nothing had been removed. In an April 24, 2013 telephone conversation between Relators and Wells's fiancée, she confirmed receiving the Condition 12 paperwork but expressed uncertainty about how it worked. Relators responded that it worked "exactly how it's spelled out in the policy" and summarized it for her.[2]

---

[2][Relators]: Well, the first thing that has to happen is you notify the insurance company in writing of your selected disinterested appraiser, you know. Not a truck salesman at Peterbilt or something, but it has to be a licensed appraiser, and you get that information from him and send it in to the insurance company. The insurance company will then provide that information to the selected appraiser of the insurance company.

[Wells's fiancée]: Okay. And so will you get a new appraisal or are you going with the appraisal that you already received?

[Relators]: No. They'll do a new appraisal too.

[Wells's fiancée]: Okay.

3

However, on April 26, 2013, Relators emailed Wells's fiancée to inform her that they had determined that certain items had been removed or swapped from the truck, and on April 30, 2013, Relators informed Wells's fiancée that because the drive wheels and tires had been swapped, they were reducing the salvage bid by $2,000. Relators sent Wells revised settlement paperwork on the same date. Wells's fiancée emailed Relators and refused the settlement because of the dispute over the tires. She maintained the setoff for the tires should be only $276, not $2,000. Relators informed Wells's fiancée that if she was not happy with the offer, she could use the appraisal clause. In an April 30, 2013 email, she wrote that $20,724 was their final offer. A representative of Relators acknowledged telling Wells's fiancée at some point that Relators had made their final offer and that Wells needed to get an attorney or use Condition 12, but the representative himself expressed confusion over how Condition 12 worked exactly.

---

[Relators]: It will be re-evaluated –

[Wells's fiancée]: And then what happens?

[Relators]: It will be re-evaluated by both, your appraiser, the insurance company's appraiser. If the two of them don't agree on a price, then it'll go to an umpire. And then you and the insurance company will split the cost of the umpire. You'll be responsible for your appraiser fees. The insurance company will be responsible for theirs. And then if it goes to an umpire, then the umpire will be split between you and the insurance company.

In early June 2013, Relators received a notice of attorney representation from Wells's attorney. Wells's attorney's paralegal followed up with an email to Relators on June 19, 2013, and spoke with Relators. Relators sent the revised settlement paperwork to Wells's attorney on July 2, 2013. On July 23, 2013, Wells's attorney's paralegal communicated Wells's counsel's demand for $40,000 to Relators. On the same date, Relators spoke with Wells's attorney and requested documentation supporting the $40,000 demand. On August 13, 2013, Relators emailed Wells's attorney's paralegal to inquire about the status of the documentation they previously requested. Relators followed up again on August 22, 2013. Wells filed suit against Relators on September 17, 2013.

Thereafter, nearly five months later, on February 6, 2014, Relators emailed Wells's attorney regarding the settlement negotiations. On February 14, 2014, Wells's attorney responded by making a demand for $125,000. Relators rejected the demand on February 19, 2014, and requested compliance with the appraisal requirement in Condition 12 of the policy.

In response, for the purpose of appointing an appraiser, Wells's attorney asked Relators for the location of the truck. Relators informed Wells's attorney that because Wells had indicated he did not intend to keep the truck, a salvage company had taken it and dismantled it; however, Relators further informed Wells's attorney that there were photographs of the truck as well as

specifications clearly showing the equipment on the truck and the condition of the vehicle.

On March 7, 2014, despite expressing some reservations, Wells's attorney selected an appraiser. Wells's attorney wrote: "It is my understanding from speaking with our appraiser that a traditional appraisal will not be possible without the physical tractor present to be appraised; however, our appraiser will attempt to provide a valuation of the vehicle based on the information that you provided."

On April 28, 2014, Wells's appraiser completed a "Total Loss Evaluation Worksheet." Wells's appraiser made no complaint about his inability to personally inspect the vehicle and listed his estimate at $26,807.94. On May 6, 2014, Wells's appraiser completed his "Truck Appraiser's Report" and, again, made no complaint about his inability to personally inspect the truck. Within the report, Wells's appraiser indicated that he had spoken with Relators' appraiser and that they had agreed to settle the claim. Wells's appraiser took his estimate of $26,807.94, subtracted $2,000 for the wheels and tires, and then reported that Relators were willing to settle for $24,807.94.

After a couple months of inactivity, on May 28, 2014, Wells's attorney sent a revised settlement demand of $100,000. Relators did not respond.

However, on June 27, 2014, Relators emailed Wells's attorney and stated that their understanding was that the two appraisers had reached an agreement

6

that the loss of the value of the truck was $23,888.34. Relators offered Wells $5,000 to resolve the remainder of his claims. On June 30, 2014, Wells's attorney responded by asking Relators to make the check payable to Wells but asserted they were not releasing all of their claims. On July 8, 2014, Relators forwarded to Wells's attorney settlement paperwork and a settlement check in the amount of $23,888.34 made payable to Wells.

Thereafter, on August 27, 2014, Relators filed their "First Amended Answer and Counterclaims." Relators argued that Wells had not, before bringing suit, performed a condition precedent to the contract. Specifically, Relators alleged Wells did not comply with Condition 12 of the insurance policy before bringing his suit.[3] On the same date, Relators filed a "No-Evidence Motion for Summary Judgment" as to all of Wells's claims.

On September 18, 2014, Wells informed Relators that the check for $23,888.34 was in the wrong amount and appeared to suggest that the check should have been for $24,807.94. On February 19, 2015, the parties discussed filing a motion to appoint an umpire. On March 13, 2015, Relators filed their "Motion to Appoint Impartial Umpire to Appraise Vehicle."

On March 16, 2015, Wells filed his "Third Amended Original Petition" and, for the first time, argued that Relators had waived their right to invoke the appraisal clause in Condition 12. Wells maintained that an impasse had

---

[3]As shown here, the first time noncompliance with Condition 12 arose in the trial court was when Relators alleged noncompliance by Wells.

7

occurred when he filed suit on September 17, 2013, and that, by waiting until February 19, 2014, Relators had waived their right to request an appraiser under the appraisal clause. Wells also complained about the destruction of the truck. In his April 21, 2015 "Objection and Response to Defendants' Motion to Appoint Impartial Umpire to Appraise Vehicle," Wells made the same argument.

The trial court conducted a hearing on Relators' motion to appoint an umpire and motion for summary judgment on April 23, 2015. On May 18, 2015, the trial court signed an order denying Relators' motion to appoint an umpire. On June 3, 2015, the trial court signed an order denying Relators' motion for summary judgment on Wells's claim for breach of contract.

## Standard of Review

Mandamus is an extraordinary remedy that will issue only if (1) the trial court clearly abused its discretion and (2) the party requesting mandamus relief has no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 888 (Tex. 2010) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). We may not substitute our judgment for that of the trial court unless the relator establishes that the trial court could reasonably have reached only

one decision and that the trial court's decision is arbitrary and unreasonable. *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004) (orig. proceeding); *Walker*, 827 S.W.2d at 839–40. We give deference to a trial court's factual determinations that are supported by evidence, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). We determine the adequacy of an appellate remedy by balancing the benefits of mandamus review against its detriments. *Prudential Ins. Co. of Am.*, 148 S.W.3d at 136. In evaluating benefits and detriments, we consider whether mandamus will preserve important substantive and procedural rights from impairment or loss. *Id.*

### Absence of Reporter's Record of April 23, 2015 Hearing

Wells contends that the court should deny Relator's petition because the record is incomplete for want of the reporter's record of the April 23, 2015 hearing. We disagree. Where the trial court heard no evidence, the absence of a reporter's record of the hearing is not fatal. *See Otis Elevator Co. v. Parmelee*, 850 S.W.2d 179, 181 (Tex. 1993). Parties are not required to obtain transcriptions of non-evidentiary hearings to preserve error. *See id.* The order denying the motion to appoint an umpire recites that the trial court considered "the motion, response, reply, arguments of counsel, and other matters of record." The order does not recite that the trial court heard any evidence. The order denying the motion for summary judgment, the hearing on which was heard at

9

the same time as the motion to appoint an umpire, recites as well that the trial court considered "the motion, response, reply, arguments of counsel, and other matters of record." We would not expect oral testimony at a hearing on a motion for summary judgment. *See* Tex. R. Civ. P. 166a(c). Finally, on August 12, 2015, Relators filed a statement in compliance with rule 52.7(a)(2) of the Texas Rules of Appellate Procedure in which they asserted that no testimony was adduced in connection with the matter complained of. Tex. R. App. P. 52.7(a)(2). We hold the absence of a reporter's record of the April 23, 2015 hearing is not dispositive of this proceeding. *See Otis Elevator Co.*, 850 S.W.2d at 181.

### Whether Relators Waived Condition 12 (The Appraisal Provision)

Appraisal provisions can be enforced by mandamus. *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 405, 412 (Tex. 2011) (orig. proceeding). In their first issue, Relators argue the trial court abused its discretion by failing to enforce the appraisal clause in the insurance policy by denying their motion to appoint an impartial umpire. Relators argue that the only way Wells could avoid the appraisal clause is to establish waiver and that Wells failed to establish waiver. For the reasons given below, we agree.

Wells maintains Relators waived the appraisal clause by destroying the truck, which he asserts was an act inconsistent with the clause. *See Am. Cent. Ins. Co. v. Terry*, 26 S.W.2d 162, 166 (Tex. 1930) (stating that waiver can be established by conduct of the insurer, including, "(a) Parol waiver; (b) refusal to

10

arbitrate; (c) denial of liability; (d) failure to demand arbitration or appraisal; (e) acts inconsistent with intention to arbitrate; (f) appointment of prejudiced appraiser; and (g) improper conduct during appraisement"). Relators respond that the destruction of the truck had no bearing on the parties' willingness to negotiate or on the appraisers' ability to make their appraisals. We agree with Relators. Wells's attorney, when informed of the destruction of the truck, nevertheless proceeded with the appraisal process, and Wells's own appraiser never complained that the truck's destruction impeded his ability to make an appraisal. At most, the destruction of the truck merely complicated the appraisal process.

Wells next argues the parties reached the point of impasse when he filed suit on September 17, 2013, and that, by waiting until February 19, 2014, before invoking the appraisal clause, Relators waived it. Relators disagree and argue that the point of impasse, if any, occurred in February 2014 when Wells more than tripled his demand. Relators also emphasize that Wells thereafter actually engaged in the appraisal process for more than a year before raising the waiver argument for the first time in his March 16, 2015 "Third Amended Original Petition."

The Texas Supreme Court has held that to establish waiver of an appraisal clause, a party must show that (1) an impasse was reached as to settlement negotiations; (2) an unreasonable amount of time passed after the parties

reached an impasse, and (3) the party suffered prejudice due to the delay. *Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d at 408, 411–12. "An impasse is not the same as a disagreement about the amount of loss. Ongoing negotiations, even when the parties disagree, do not trigger a party's obligation to demand appraisal." *Id.* at 408. An impasse occurs when the parties mutually understand that neither will negotiate further. *Id.* at 409.

We disagree that Wells's filing suit in September 2013 signaled an impasse. *See Terra Indus., Inc. v. Commonwealth Ins. Co. of Am.*, 981 F. Supp. 581, 603 (N.D. Iowa 1997) ("Before Terra filed suit, the IRI defendants had no notice that an impasse had been reached, because only the filing of Terra's suit demonstrated Terra's unilateral conclusion that the parties were at an impasse when the IRI defendants still anticipated further discussions."); *see also Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d at 409 (citing *Terra Indus., Inc.*, 981 F. Supp. at 603). Merely fling suit does not inherently signal that the parties have mutually concluded that all future settlement negotiations would be futile.

Additionally, Wells subsequently engaged in settlement negotiations in February 2014. Wells's own conduct belies his assertion that the parties had reached an impasse earlier. *See Terra Indus., Inc.*, 981 F. Supp. at 603. (observing that the parties "continuing indications of a willingness to seek agreement on amount-of-loss issues made any delay by the IRI defendants in

12

demanding an appraisal, instead of demanding appraisal immediately after suit was filed, reasonable under the circumstances").

When Relators responded by invoking the appraisal clause on February 19, 2014, Wells never balked on the basis of waiver; just the opposite, Wells complied with the appraisal clause by appointing his own appraiser. Wells even made a settlement demand of $100,000 on May 28, 2014, independent of the appraisal-clause process. *See id.* at 604 ("On the undisputed facts that the parties attempted to continue negotiations immediately before and even after suit was filed, and the absence of any evidence of prejudice to Terra from the delay, the court concludes that there was no waiver of appraisal in this case."). Wells's own conduct contradicted his assertion that the parties mutually concluded that they had reached an impasse in September 2013 when he filed suit.

Further, waiver cannot be invoked unless Wells can establish prejudice from any resulting delay. *Universal Underwriters of Tex. Ins. Co.,* 345 S.W.3d at 411. The only evidence of "prejudice" Wells has produced is that "by the time that [Relators] attempted to invoke the appraisal clause [Wells] only had pictures to conduct their appraisal." The prejudice required, however, is prejudice *following* impasse and prior to invocation of the appraisal process, *i.e.*, prejudice caused by the insurer's unreasonable delay in invoking the process. *See id.* at 408, 411–12. Wells has produced no evidence that the destruction of the truck was the result of any such delay. To the contrary, the only evidence on this point

13

is that Wells did not want the salvage and elected not to retain the truck on April 24, 2013, and that the truck was thereafter released to a salvage company, all of which occurred long prior to any "impasse" reached between the parties. Wells's appraiser, moreover, was in fact able to place a value on the vehicle with reference to the pictures and specifications provided to him. As to other allegations in Wells's response about loss of use and income during the time he contends that Relators unreasonably delayed, Wells has provided no evidence and, as noted by the Supreme Court in *Universal Underwriters,* Wells could have avoided any prejudice by invoking the appraisal process himself at any time. *Id.* at 411.

For all the above reasons, we hold there was no unreasonable delay and no prejudice and, thus, no waiver of the appraisal process by Relators. We sustain Relators' first issue and hold that the trial court abused its discretion by denying their motion to appoint an umpire in compliance with the appraisal provision.[4]

---

[4]Condition 12 has no trigger defining when a party must invoke it or risk waiving it. As a practical matter, it appears either party could invoke the appraisal clause at the moment that serves its purposes best. Wells never invoked the appraisal clause, sought to proceed on his suit without invoking it, and, further, wanted to prevent Relators from invoking it. Relators, for their part, invoked the appraisal clause only when confronted with a demand for $125,000. While *Universal Underwriters* shows that despite the absence of a trigger, under certain circumstances, a party can waive an appraisal clause, *see id.* at 408, 411–412, we conclude that on the circumstances here, there was no wavier.

14

## The Denial of the Motion for Summary Judgment

In their second issue, Relators contend the trial court abused its discretion by allowing Wells's breach of contract claim to proceed without requiring Wells to comply with the policy's appraisal clause as a condition precedent to his suit. Relators are complaining about the trial court's denial of their motion for summary judgment on Wells's breach of contract claim.

As with the first issue, whether Wells had to comply with the appraisal clause would depend on whether Relators had waived it. Once again, Wells argues Relators waived it. Relators essentially take the position that if they win on their first issue, that is, that there was no waiver, it would necessarily follow that they should win on their second issue as well. However, we do not reach the merits of their motion for summary judgment because we conclude that the trial court's order denying Relator's motion for summary judgment is not reviewable at this juncture of the case.

Mandamus is generally unavailable when a trial court denies summary judgment, no matter how meritorious the motion. *In re United Servs. Auto. Ass'n*, 307 S.W.3d 299, 314 (Tex. 2010) (orig. proceeding) (quoting *In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 465 (Tex. 2008) (orig. proceeding)). Only extraordinary circumstances will justify granting mandamus relief when a trial court erroneously denies a motion for summary judgment. *Id.* The extraordinary circumstances in *United Services Automobile Ass'n* were: (1) a previous trial by

15

a trial court without jurisdiction, (2) an appeal to an appellate court and then to the supreme court to get that error corrected, and (3) a proposed second trial on a claim barred by limitations. *Id.* In granting mandamus relief based on extraordinary circumstances in that case, the supreme court noted: "Two wasted trials are not '[t]he most efficient use of the state's judicial resources.'" *Id.* (quoting C*SR Ltd. V. Link*, 925 S.W.2d 591, 596 (Tex. 1996) (orig. proceeding)[5]). Relators have made no comparable showing of extraordinary circumstances. Expressing no opinion on the merits of the trial court's order denying Relators' motion for summary judgment, we hold that mandamus does not lie to review such an order.

Appraisal will set the amount of loss conclusively, and may dispose of Plaintiff's breach of contract claims entirely. *See James v. Prop. Cas. & Ins. Co. of Hartford*, No. H-10-1998, 2011 WL 4067880, at \*2 n.7 (S.D. Tex. Sept. 12, 2011) *(citing In re Allstate Cty. Mut. Ins. Co.*, 85 S.W.3d 193, 196 (Tex. 2002) (orig. proceeding) (noting that "if the appraisal determines that the vehicle's full value is what the insurance company offered, there would be no breach of contract," and concluding that "[a] refusal to enforce the appraisal process here will prevent the defendants from obtaining the independent valuations that could counter at least the plaintiffs' breach of contract claim")).

---

[5] *See Raymond Overseas Holding, Ltd. v. Curry*, 955 S.W.2d 470, 471 (Tex. App.—Fort Worth 1997, orig. proceeding) (op. on reh'g) (recognizing *CSR Ltd.* was superseded by statute allowing interlocutory appeals of orders granting or denying special appearances).

Appraisal may obviate the need for further litigation, with all of the burdens and costs of pretrial discovery and the like; "and if not, then in due season what remains to be litigated can proceed with efficient focus by the parties upon the specific issues remaining." *James*, 2011 WL 4067880, at *2 n.7 *(citing Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996) (orig. proceeding)). We overrule Relators' second issue.

## Conclusion

Accordingly, we sustain Relators' first issue; conditionally grant the mandamus relief requested by Relators in their first issue; direct the trial court to vacate its order denying Relators' motion to appoint an umpire; and direct the trial court to grant Relators' motion and appoint an umpire in accordance with Condition 12 of the insurance policy. We are confident the trial court will comply, and the writ will issue only if it fails to do so. We have overruled Relators' second issue; therefore, their petition is otherwise denied.

/s/ Anne Gardner
ANNE GARDNER
JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

DELIVERED: September 4, 2015

17