

# NUMBER 13-24-00615-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE GERMANIA FARM MUTUAL INSURANCE ASSOCIATION

## ON PETITION FOR WRIT OF MANDAMUS

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Silva and Peña
Memorandum Opinion by Justice Silva[1]**

Relator Germania Farm Mutual Insurance Association (Germania) filed a petition for writ of mandamus asserting that: (1) the trial court[2] abused its discretion by appointing an umpire in violation of the terms of the appraisal provision in the insurance policy at

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.1 (requiring the appellate courts to "hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition"); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

[2] This original proceeding arises from trial court cause number CL-24-1559-E in the County Court at Law No. 5 of Hidalgo County, Texas, and the respondent is the Honorable Arnoldo Cantu. *See id.* R. 52.2.

issue; and (2) the insurance policy requires the insured and the insurer to resolve disputes between the parties' appraisers by having the American Arbitration Association (AAA) appoint an umpire. We conditionally grant the petition for writ of mandamus.

## I. BACKGROUND

Real party in interest Jorge Garcia made a claim under his homeowner's insurance policy for damage sustained to his property in a storm. Garcia ultimately filed suit against Germania alleging breach of the insurance contract, prompt payment claims, bad faith and Texas Deceptive Trade Practices Act (DTPA) claims, and breach of the duty of good faith and fair dealing. Germania invoked appraisal under the provisions of the insurance policy and appointed Mark Anderson as its appraiser. Garcia appointed Ricardo Ochoa as his appraiser. The appraisers were unable to reach an agreement as to the amount of the loss. Garcia filed a motion asking the trial court to appoint an umpire. Germania opposed Garcia's motion on grounds that the insurance policy required the appointment of an umpire to be made by the AAA. The trial court nevertheless appointed attorney Pablo "Sonny" Garza as umpire.

This original proceeding ensued. Germania alleges, in short, that the insurance policy requires the appointment of an umpire to be made by the AAA; thus, the trial court erred in appointing the umpire. We requested and received a response to the petition for writ of mandamus from Garcia. *See* TEX. R. APP. P. 52.4, 52.5, 52.8. Garcia contends both that the trial court did not abuse its discretion and that even if the trial court erred, Germania possesses an adequate remedy by appeal. Germania has filed a reply to Garcia's response. *See id.* R. 52.5.

2

## II. MANDAMUS

Mandamus is an extraordinary and discretionary remedy. *See In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). The relator must show that: (1) the trial court abused its discretion; and (2) the relator lacks an adequate remedy on appeal. *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). "The relator bears the burden of proving these two requirements." *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 302 (Tex. 2016) (orig. proceeding) (per curiam); *Walker*, 827 S.W.2d at 840.

Trial courts have no discretion to ignore a valid appraisal clause. *See State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888 (Tex. 2009); *In re Acceptance Indem. Ins.*, 562 S.W.3d 645, 649 (Tex. App.—San Antonio 2018, orig. proceeding); *In re State Farm Lloyds*, 514 S.W.3d 789, 792 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding). Thus, mandamus is available to remedy certain matters pertaining to the appraisal process. *See In re Universal Underwriters of Tex. Ins.*, 345 S.W.3d 404, 412 (Tex. 2011) (orig. proceeding); *In re Allstate Cnty. Mut. Ins.*, 85 S.W.3d 193, 196 (Tex. 2002) (orig. proceeding).

## III. APPRAISAL

An insurance policy establishes the rights and obligations to which an insurer and its insured have agreed. *See In re Farmers Tex. Cnty. Mut. Ins.*, 621 S.W.3d 261, 270 (Tex. 2021) (orig. proceeding); *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488

3

(Tex. 2018). We interpret insurance policies under the rules of construction that apply to contracts in general. *Pharr-San Juan-Alamo Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self Ins. Fund*, 642 S.W.3d 466, 473 (Tex. 2022); *Richards v. State Farm Lloyds*, 597 S.W.3d 492, 497 (Tex. 2020). Our primary goal is to effectuate the parties' intent as expressed in the insurance policy. *Monroe Guar. Ins. v. BITCO Gen. Ins.*, 640 S.W.3d 195, 198–99 (Tex. 2022). "We determine the parties' intent through the terms of the policy, giving words and phrases their ordinary meaning, informed by context." *Dillon Gage Inc. of Dall. v. Certain Underwriters at Lloyds Subscribing to Pol'y No. EE1701590*, 636 S.W.3d 640, 643 (Tex. 2021).

"Appraisal clauses in Texas insurance policies have long provided a mechanism to resolve disputes between policy holders and insurers about the amount of loss for a covered claim." *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019). The Texas Supreme Court has explained the policies underlying the appraisal process as follows:

> Today, appraisal clauses are included in most property insurance policies. Access to the appraisal process to resolve disputes is an important tool in the insurance claim context, curbing costs and adding efficiency in resolving insurance claims. This Court has reasoned that "[l]ike any other contractual provision, appraisal clauses should be enforced." "[I]n every property damage claim, someone must determine the 'amount of loss,' as that is what the insurer must pay." Appraisal clauses are a means of determining the amount of loss and resolving disputes about the amount of loss for a covered claim.
>
> . . . .
>
> We note that an insurer's use of the policy's appraisal process represents a willingness to resolve a dispute outside of court—often without admitting liability on the claim, or even specifically disclaiming liability—similar to a settlement. An insurer's payment under such circumstances results from a calculated risk assessment that paying the appraisal value will ultimately be less risky or costly than litigating the claims to determine liability. As such, the payment in accordance with an appraisal is neither an acknowledgment of liability nor a determination of liability under the policy . . . .

4

*Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 814, 820 (Tex. 2019) (citations omitted). The supreme court has described "the appraisal process as an efficient and less costly alternative to litigation, requiring 'no lawsuits, no pleadings, no subpoenas, and no hearings.'" *Ortiz*, 589 S.W.3d at 131 (quoting *Johnson*, 290 S.W.3d at 894); *see Barbara Techs. Corp.*, 589 S.W.3d at 814; *In re Universal Underwriters of Tex. Ins.*, 345 S.W.3d at 407. We enforce appraisal clauses as we would any other contractual provision. *Johnson*, 290 S.W.3d at 895.

### IV.    UMPIRE

Germania contends that the trial court erred by appointing a new umpire in violation of the terms of the insurance policy at issue. In contrast, Garcia asserts that the trial court's decision to appoint an umpire was not "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law."

The terms of Garcia's insurance policy regarding the appointment of an umpire provide in relevant part:

(1)    If the appraisers cannot agree on the **incurred property damage** or the actual cash value of the **incurred property damage**, they will advise each of us of their failure to agree. You or we shall then first request the [AAA] to select an umpire.

(2)    Only if the AAA advises you and us in writing that it cannot appoint an umpire may we then jointly request a judge of a district court in the judicial district where the residence premises is located to select an umpire. A judge of a district court does not include a commissioner or a judge of a county court at law, of a justice court, a municipal court, a probate court, or of a commissioner's court.

(3)    In order for a person to be qualified to act as an umpire under this appraisal clause, the [person] must be competent, independent, neutral and impartial. A person who has or may [perform], or who is employed by an entity which has or may perform repairs or replacement of our property shall not be qualified to serve as an

5

umpire.

(4)     Upon the appointment of an umpire by AAA, or a district judge, the umpire shall within 5 days disclose in writing to you and to us any known facts which a reasonable person may consider to affect the independence, neutrality or [impartiality] of the umpire, including without limitation any financial or personal interest in the [outcome] of the appraisal.

(5)     Within 20 days of a qualified umpire being appointed, each of the appraisers shall then submit to the umpire, and to both you and us, their appraisals. Their appraisals shall contain all of the information required in part e[.] above, and shall identify each specific matter upon which they disagree and explain in detail why they disagree. Both appraisers and the umpire shall then together meet and confer. The umpire shall then prepare an appraisal. A written appraisal in conformance with and setting forth all the information required in part e. above, agreed upon and signed by the umpire and either one of the two appraisers will determine the **incurred property damage** and the actual cash value of the **incurred property damage** of your claimed loss.

(6)     If a vacancy should occur regarding the umpire, the vacancy shall be filled in accord with the foregoing process by which the [vacating] umpire was appointed. Any appointed umpire is subject to (3) and (4) of this part f.

Thus, the insurance policy expressly requires that if the appraisers do not agree, either Germania or Garcia "shall" request the AAA to select an umpire. Furthermore, the policy clearly states that a judge may only appoint the umpire if the AAA has advised the parties in writing that it is unable to appoint an umpire. There is no indication in the record that the parties or the trial court did so, nor is there any indication that AAA has advised the parties in writing that it cannot appoint an umpire, such that the secondary appointment process would apply.

We review Garcia's contentions regarding why we should not enforce this provision. Garcia asserts that Germania filed a motion to abate the case pending the outcome of appraisal, and its motion to abate contained a judicial admission that the trial

6

court had the authority to appoint an umpire. In short, Germania's motion to abate referenced, quoted, and attached the wrong insurance policy which, unlike the one at issue in this case, allowed the appraisers to select an umpire and, in the event of a disagreement, allowed the parties to ask a judge to select the umpire. In its reply to Garcia, Germania concedes that it appears that "it quoted from the wrong insurance policy."

A party's testimonial declarations which are contrary to its position are quasi-admissions which constitute "some evidence" and "not conclusive upon the admitter." *Mendoza v. Fid. & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980); *see Cruz v. Mor-Con, Inc.*, 672 S.W.3d 175, 182 (Tex. App.—Tyler 2023, no pet.); *Blair v. Blair*, 642 S.W.3d 150, 159 (Tex. App.—El Paso 2021, no pet.). However, a party's quasi-admission will preclude recovery when: (1) the statement was made during the course of a judicial proceeding; (2) the statement is contrary to an necessary fact in the theory of recovery or defense asserted by the person giving the testimony; (3) the statement is deliberate, clear, and unequivocal, and "[t]he hypothesis of mere mistake or slip of the tongue must be eliminated"; (4) giving conclusive effect to the statement will be consistent with public policy; and (5) the statement is not also destructive of the opposing party's theory of recovery. *Mendoza*, 606 S.W.2d at 694; *see Cruz*, 672 S.W.3d at 182; *City of Webster v. Hunnicutt*, 650 S.W.3d 792, 801 (Tex. App.—Houston [14th Dist.] 2022, pet. denied); *Blair*, 642 S.W.3d at 160.

Here, Germania asserts that it made a mistake in using the wrong insurance policy to support its motion to abate. On these facts, we decline to find that Germania made a quasi-judicial admission that the trial court had the right to appoint an umpire. *See*

*Mendoza*, 606 S.W.2d at 694; *Cruz*, 672 S.W.3d at 182; *City of Webster*, 650 S.W.3d at 801; *Blair*, 642 S.W.3d at 160.

Next, Garcia contends that the trial court exercised its discretion to dispose of its cases with economy of time and effort. Garcia alleged that Germania did not request AAA to appoint an umpire for a period of forty-six days, so the trial court made the appointment "pursuant to his inherent authority to manage his docket." In this regard, the "trial judge has the inherent power to control the manner of the disposition of cases on his or her docket." *In re Uzomba*, 683 S.W.3d 358, 371 (Tex. Spec. Ct. Rev. 2024) (per curiam); *see Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240 (Tex. 2001) (per curiam). However, a trial court's inherent authority does not extend to rewriting the parties' insurance policy. Further, we note that the insurance policy contains no deadline pertaining to the appointment of an umpire and that either party has the right to make a request to the AAA. Thus, the trial court's appointment of an umpire was not authorized by its inherent authority.

Garcia further asserts that the trial court may have found the AAA provision unenforceable, severed it, and enforced the rest of the policy. This contention is not supported by the record. *See* TEX. R. APP. P. 52.3(g), (h), 52.4. We do not decide cases based on speculative or hypothetical situations. *See In re Carrington*, 438 S.W.3d 867, 870 (Tex. App.—Amarillo 2014, orig. proceeding); *Scurlock Permian Corp. v. Brazos Cnty.*, 869 S.W.2d 478, 487 (Tex. App.—Houston [1st Dist.] 1993, writ denied). We decline Garcia's invitation to base our ruling in this original proceeding on conjecture and speculation.

Finally, Garcia asserts that Germania is attempting to define the trial court's

8

jurisdiction by arguing that the trial court, as a county court rather than a district court, lacks the ability to appoint an umpire. However, Germania neither argues that the court lacked jurisdiction over the case nor is that issue germane to the appointment process at issue under the insurance policy. Garcia's arguments regarding jurisdiction are inapposite to the case at hand.

We conclude that the umpire selection process in the appraisal clause should be enforced like any other contractual provision. *See Johnson*, 290 S.W.3d at 895. Thus, the trial court abused its discretion by appointing an umpire in the case. *See id.*; *see also In re State Farm Lloyds*, No. 13-22-00545-CV, 2023 WL 2029148, at *1 (Tex. App.—Corpus Christi–Edinburg Feb. 15, 2023, orig. proceeding) (mem. op.).

## V.    REMEDY

Garcia contends that mandamus should not issue because Germania possesses an adequate remedy by appeal to address any error. According to Garcia, Germania's substantive rights are not at risk of impairment of loss, mandamus would not provide needed guidance to the law that would otherwise prove elusive in an appeal from a final judgment, and mandamus will not prevent a waste of resources regarding proceedings that would eventually be reversed. Germania asserts in contrast, that mandamus routinely issues to enforce the appraisal process. It further points out that there is no immediate review of the trial court's decision to appoint an umpire and that any appeal would have to take place after final judgment. Finally, Germania argues that once an appraisal award is issued by an "unqualified umpire," it will have to meet "a very difficult and high standard" to set it aside.

In accordance with our standard of review for original proceedings, we weigh the

9

benefits of mandamus review against the detriments. *In re Acad., Ltd.*, 625 S.W.3d 19, 32 (Tex. 2021) (orig. proceeding); *see In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36. The Texas Supreme Court has repeatedly emphasized the importance of the appraisal process as an efficient, contractually agreed procedure for determining the amount of loss. *See, e.g.*, *Barbara Techs. Corp.*, 589 S.W.3d at 820; *Ortiz*, 589 S.W.3d at 131–33; *Johnson*, 290 S.W.3d at 894; *see also In re Ooida Risk Retention Grp., Inc.*, 475 S.W.3d 905, 914 (Tex. App.—Fort Worth 2015, orig. proceeding) ("Appraisal may obviate the need for further litigation, with all of the burdens and costs of pretrial discovery and the like; 'and if not, then in due season what remains to be litigated can proceed with efficient focus by the parties upon the specific issues remaining.'") (quoting *James v. Prop. & Cas. Ins. Co. of Hartford*, No. H-10-1998, 2011 WL 4067880, at *2 n.7 (S.D. Tex. Sept. 12, 2011) (order)). The supreme court has granted mandamus relief to enforce the appraisal process because denying an appraisal "would vitiate the insurer's right to defend its breach of contract claim." *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d at 412; *see In re Allstate Cnty. Mut. Ins.*, 85 S.W.3d at 196; *see also In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 140. The Fourteenth Court of Appeals has also concluded that there is an inadequate remedy by appeal to address a trial court's erroneous action in setting aside an appraisal award. *See, e.g.*, *In re Auto Club Indem. Co.*, 580 S.W.3d 852, 857–58 (Tex. App.—Houston [14th Dist.] 2019, orig. proceeding) ("We see no material difference between a trial court's improper refusal to enforce an appraisal clause and a trial court's improper setting aside an appraisal award—they both may vitiate or severely comprise the defendant's ability to defend against the plaintiff's breach of contract claim.").

This Court previously determined that there was an inadequate remedy by appeal to cure the trial court's error in appointing an attorney as an umpire when the relevant insurance policy required the umpire to be an engineer, architect, adjuster, public adjuster, or contractor:

> Based on the specific facts and circumstances of this case, we conclude that relator lacks an adequate remedy by appeal to address the trial court's error in appointing an individual as umpire who fails to meet the requirements delineated in the insurance policy. *See In re Universal Underwriters of Tex. Ins.*, 345 S.W.3d at 412; *In re Allstate Cnty. Mut. Ins.*, 84 S.W.3d at 196; *see also In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 140 (noting that the supreme court has issued mandamus "to enforce contractual rights" and has done so "to enforce the parties' agreement to submit to an appraisal process for determining the value of a vehicle claimed to be a total loss"). Absent mandamus review, the trial court's error will cause the parties and public to incur "time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136. Stated otherwise, a refusal to enforce the terms of the insurance policy regarding the requirements for an umpire will impair the efficacy of the appraisal process insofar as an umpire who fails to meet the policy's requirements will lack the expertise necessary to obtain an appraisal award reflecting the proper valuation of the property damages at issue. Further, allowing the appointment of an unqualified umpire would engender additional litigation and would affect relator's ability to defend any claims for breach of contract that might be filed in the future. *See In re Auto Club Indem. Co.*, [580 S.W.3d at 857–58]. We thus conclude that relator lacks an adequate remedy by appeal.

*In re State Farm Lloyds*, 2023 WL 2029148, at *1, *7. The case before us is slightly different insofar as it concerns the contractually agreed method for appointing an umpire rather than the umpire's qualifications; however, both cases present a failure to abide by the terms of the insurance policy regarding appraisal.

An appellate remedy is inadequate when a trial court's ruling creates a danger of a party's permanently losing substantial rights, as when an appellate court would not be able to cure the error, when the party's ability to present a viable claim or defense is vitiated, or when the error cannot be made a part of the appellate record. *ERCOT, Inc. v.*

11

*Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 641 (Tex. 2021) (orig. proceeding). It is undisputed that there is no right to appeal from the trial court's order appointing an umpire. Further, given the standard of review, it is doubtful that an appellate court would be able to cure the error on appeal from the final judgment.[3] *See id.*

Based on the foregoing, we thus conclude that mandamus is the proper method to challenge the trial court's order.

## VI. CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, Garcia's response, Germania's reply, and the applicable law, is of the opinion that Germania has met its burden to obtain relief. Accordingly, we conditionally grant the petition for writ of mandamus. We direct the trial court to vacate its order appointing an umpire and to proceed in accordance with the terms of the insurance policy. Our writ will issue only if the trial court fails to promptly comply.

CLARISSA SILVA
Justice

Delivered and filed on the
6th day of February, 2025.

---

[3] "Texas courts hold that appraisal awards made under the provisions of an insurance contract are binding and enforceable, and indulge every reasonable presumption to sustain an appraisal award." *Zhu v. First Cmty. Ins.*, 543 S.W.3d 428, 433 (Tex. App.—Houston [14th Dist.] 2018, pet. dism'd). A party seeking to avoid the enforcement of an appraisal award carries the burden of proving that: (1) the award was made without authority; (2) the award was made because of fraud, accident, or mistake; or (3) the award failed to comply with the requirements of the insurance policy. *Id.*; *see also Gen. Star Indem. Co. v. Spring Creek Vill. Apartments Phase V, Inc.*, 152 S.W.3d 733, 737 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (requiring a showing that the award was not made in "substantial compliance" with the policy). The supreme court has not addressed the specific showing required to set aside an award on grounds that it fails to comply with the policy. *Compare GuideOne Mut. Ins. Co. v. First Baptist Church of Brownfield*, 495 F. Supp. 3d 428, 431 (N.D. Tex. 2020) ("Because First Baptist failed to satisfy the sworn proof-of-loss condition precedent to the appraisal process, the award was not entered with the appropriate authority or in substantial compliance with the Policy. Consequently, the Court declares the appraisal award void and strikes the appointed umpire."), *with TMM Investments, Ltd. v. Ohio Cas. Ins.*, 730 F.3d 466, 472 (5th Cir. 2013) (concluding that "that minor mistakes that do not taint the entire award should not frustrate the parties' intent to be bound by the appraisal provision of their contract").