USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________  No. 95-1495 MENORAH INSURANCE COMPANY, LTD., Plaintiff-Appellee, v. INX REINSURANCE CORPORATION, Defendant-Appellant. ____________________ No. 95-1497 MENORAH INSURANCE COMPANY, LTD., Plaintiff-Appellant, v. INX REINSURANCE CORPORATION Defendant-Appellee. _______________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jose Antonio Fuste, U.S. District Judge]  ____________________ Before Lynch, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ Watson,* Senior Judge. _____________ ____________________ Luis A. Melendez-Albizu, Jaime Sifre Rodriguez, and Sanchez- _________________________ _______________________ ________ Betances & Sifre, were on brief for Menorah Insurance Company, Ltd. ________________ Juan H. Saavedra Castro was on brief for INX Reinsurance __________________________ Corporation. ____________________ December 26, 1995 ____________________ _________________ *Of the United States Court of International Trade, sitting by designation. -2-  LYNCH, Circuit Judge. After unsuccessfully LYNCH, Circuit Judge. _______________ attempting to invoke arbitration under international business contracts, Menorah Insurance Company obtained an $812,907 default judgment in an Israeli court against INX Reinsurance Corporation and then sought to enforce the judgment in a Puerto Rican court. After waiting a year, and on the eve of having an exequatur judgment entered against it, INX removed the action to the U.S. District Court for Puerto Rico under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, implemented in 9 U.S.C. 201 et seq. __ ____ (1994).1 The federal court found that INX had waived arbitration and remanded. We affirm because INX has both explicitly and implicitly waived arbitration. Under seven reinsurance treaties between them, Menorah, an Israeli company, and INX, a Puerto Rican corporation, agreed that "all disputes" between them would be arbitrated and should be settled "in an equitable rather than in a strictly legal manner."2 The locus of arbitration  ____________________ 1. The Convention was opened for signature on June 10, 1958, 330 U.N.T.S. 38, and is reprinted in 9 U.S.C.A. 201 n. (West Supp. 1995). 2. The arbitration clause presented by INX as being representative provides that: All disputes which may arise between the two contracting parties with reference to the Interpretation or the carrying out of this Agreement or to any matter originating therefrom or in any way connected with the same, and whether -3- 3 was to be Tel Aviv, Israel. Each side was to appoint an arbitrator and should the two arbitrators disagree, then an "Umpire," previously designated by the two arbitrators, would decide. There was a default provision of sorts: "In the event of either party failing to appoint an umpire within two months after arbitration has been supplied [sic] for under the question in dispute, then in either such case the arbitrators and/or umpire shall be appointed by the chairman for the time being of the Israeli Fire Insurance Association." Menorah made a claim to INX for over $750,000 under the reinsurance treaties, to which INX replied that it owed no more than $178,000 and intimated that fraud accounted for the $500,000 difference. After unsuccessful negotiations, Menorah, on July 1, 1992, informed INX by letter that it would seek arbitration, asked INX to assent to arbitration and appoint its arbitrator, said if INX failed to appoint an  ____________________ arising before or after the termination of notice under this agreement shall be entitled [sic] in an equitable rather than a strictly legal manner and in such cases the parties agree to submit to the decision of arbitrator, one to be chosen by the Company and the other by the Reinsurer and in the event of disagreement between these two, then an Umpire, who shall have been chosen by the said two arbitrators previous to their entering upon the reference, the arbitrators and/or umpire shall be managers or chief officials of fire Insurance and/or reinsurance companies. -4- 4 arbitrator, Menorah would ask that one be appointed for INX, and that if INX failed to assent, then Menorah would feel "free to pursue all other legal and judicial measures available." INX responded promptly that it would not arbitrate, that its financial condition was precarious, and that even if ordered to arbitrate, its financial condition would preclude it from doing so.  On September 10, 1992, Menorah filed suit in Tel Aviv against INX. Although actually served, INX chose not to respond or contest, and default judgment was entered against it for $812,907, interest at an annual rate of 11%, costs and attorneys' fees. INX did not pay nor did it seek to remove the default. On September 2, 1993, Menorah filed an exequatur3 action in the Superior Court in San Juan to enforce the judgment. INX moved to dismiss, claiming for the first time that the controversies between the parties had to be arbitrated. On August 8, 1994, the court denied the motion, finding that INX had waived arbitration and that the Israeli judgment was valid, and ordered INX to answer. INX answered, again claiming arbitration, and counterclaimed that Menorah's  ____________________ 3. "Exequatur" refers to an action to execute a judgment from another jurisdiction. See Seetransport Wiking Trader ___ ___________________________ Schiffahrtsgesellschaft MBH & Co. v. Navimpex Centrala _____________________________________ __________________ Navala, 29 F.3d 79, 81-82 (2d Cir. 1994).  ______  -5- 5 failure to submit the exequatur action to arbitration was in breach of its contractual duty of good faith. On October 14, 1994, the Superior Court issued an order to show cause why the petition for exequatur should not be granted. In response, INX removed the action to the federal court under 9 U.S.C. 205.4  The federal court remanded the case on March 15, 1995, finding that INX had waived arbitration and the remaining claims were not subject to the federal arbitration scheme. Now, over three years after Menorah's original request for arbitration was refused and after the travel of this matter internationally through three different courts,  ____________________ 4. Section 205 provides: Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal. For the purposes of Chapter 1 of this title any action or proceeding removed under this section shall be deemed to have been brought in the district court to which it is removed.  -6- 6 INX asks us to reverse the district court and send the matter to arbitration.  Review of a district court's determination of waiver of arbitration is plenary. See Commercial Union Ins. ___ ______________________ Co. v. Gilbane Bldg. Co., 992 F.2d 386, 390 (1st Cir. 1993); ___ __________________ Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 ________________ ____________________________________ F.3d 20, 25 (2d Cir. 1995). "[T]he findings upon which the [legal] conclusion [of waiver] is based are predicate questions of fact, which may not be overturned unless clearly erroneous." Price v. Drexel Burnham Lambert, Inc., 791 F.2d _____ _____________________________ 1156, 1159 (5th Cir. 1986).  In the increasingly international business world, the use of arbitration agreements may be particularly important to avoid the uncertainty [that] will almost inevitably exist with respect to any contract touching two or more countries, each with its own substantive laws and conflict-of- laws rules. A contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is, therefore, an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction. Scherk v. Alberto-Culver Co., 417 U.S. 506, 516 (1974). ______ __________________ These same interests motivated this country to adopt and implement the Convention, under which this case was removed to federal court: -7- 7 The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awardsareenforcedinthesignatorycountries. Id. at 520 n.15. ___ Against this backdrop of a strong United States policy favoring arbitration, INX essentially makes two arguments. The district court erred, it says, in deciding that it waived arbitration in the events of 1992. In any event, INX says, it now has the right to have the question of the enforceability of the Israeli judgment, including INX's counterclaim, determined by an arbitrator. The district court did not err on either the facts or the law. The explicit waiver came when INX was invited to arbitrate in July 1992. INX expressly declined. It is not saved from that declination by the fact that Menorah had offered in the July 1, 1992 letter to have an arbitrator appointed for INX. That offer too was declined and INX said it was both unwilling and unable to participate in the arbitration.5   ____________________ 5. INX claims the agreement required an arbitrator be ________ appointed for it if it declined to do so. The language, hardly a model of clarity, does not so directly provide, and easily could have done so were that the intent.  -8- 8 The implicit waiver came from INX's entire course of conduct. This court has repeatedly held that "parties may waive their right to arbitration and present their dispute to a court." Caribbean Insurance Services, Inc. v. American ___________________________________ ________ Bankers Life Assurance Co., 715 F.2d 17, 19 (1st Cir. 1983). ___________________________ In Caribbean, we found waiver where the party claiming _________ arbitration delayed doing so until six months after it was sued and it had entered a stipulation for a speedy trial in exchange for a "reprieve from a likely contempt finding." Id. at 20. In Jones Motor Co. v. Chauffeurs, Teamsters and ___ _______________ _________________________ Helpers Local Union No. 633, 671 F.2d 38, 43 (1st Cir.), _____________________________ cert. denied, 459 U.S. 943 (1982), we found waiver where _____ ______ eleven months of litigation occurred before arbitration was first raised, saying: [T]o require that parties go to arbitration despite their having advanced so far in court proceedings before seeking arbitration would often be unfair, for it would effectively allow a party sensing an adverse court decision a second chance in another forum. That sentiment applies here. In Gutor Int'l AG v. Raymond _______________ _______ Packer Co., 493 F.2d 938, 945 (1st Cir. 1974), we found ___________ waiver where a party unconditionally submitted part of an arbitrable matter to the courts, but later attempted to take advantage of the arbitration clause when the opposing party counterclaimed. Cf. Raytheon Co. v. Automated Business ___ _____________ __________________ Systems, Inc., 882 F.2d 6, 8 (1st Cir. 1989) (defendant ______________ -9- 9 waived issue of whether it consented to issue of punitive damages being submitted to arbitration by delaying and then raising it in desultory manner on first day of arbitration and not pursuing it).  It has been the rule in this Circuit that in order for plaintiffs to prevail on "their claim of waiver, they must show prejudice." Sevinor v. Merrill Lynch, Pierce, _______ _______________________ Fenner & Smith, Inc., 807 F.2d 16, 18 (1st Cir. 1986) _______________________ (finding no prejudice where defendants explicitly and promptly raised arbitration as a defense to a suit); accord ______ Commercial Union, 992 F.2d at 390. Because there was ample ________________ prejudice here, as the district court found, we have no reason to reconsider whether to apply the litmus test of a showing of prejudice to establish waiver or to apply a totality of circumstances test, as other circuits have done. See Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 39 ___ ____ _____________________________________________ F.3d 1482, 1489 (10th Cir. 1994) (applying a "totality of the circumstances" test for the determination of waiver, where prejudice was but one factor); S+L+H S.p.A. v. Miller-St. ____________ __________ Nazianz, Inc., 988 F.2d 1518, 1527 (7th Cir. 1993).  _____________ Ignoring its failure to appear in the Israeli action,6 INX characterizes its delay of over a year in  ____________________ 6. INX asserts that its inaction during the proceedings in Israel was justified by its desire to preserve its right to challenge the jurisdiction of the Israeli court. But INX voluntarily entered into reinsurance agreements with an Israeli corporation that specified Tel Aviv as the site for -10- 10 seeking arbitration as insufficient to show prejudice. There is no per se rule that a one year delay is or is not ___ __ sufficient to support waiver. Cf. J & S Constr. Co., Inc. v. ___ _______________________ Travelers Indem. Co., 520 F.2d 809 (1st Cir. 1975) (thirteen ____________________ month delay and participation in discovery was not enough to constitute a showing of prejudice). The period of delay here was not one in which information useful to the ultimate resolution of the dispute was being procured through discovery. Cf. Cabinetree of Wis., Inc. v. Kraftmaid ___ ___________________________ _________ Cabinetry, Inc., 50 F.3d 388, 391 (7th Cir. 1995) (explaining _______________ that delay alone is not automatically a source of prejudice and that on occasion it can comprise time the parties spend in determining information they would need in arbitration anyway). INX chose not to invoke arbitration from July 1992 until October 1993 and Menorah bore the costs of proceeding to try to obtain the sums it thought owed. See Van Ness ___ ________ Townhouses v. Mar Indus. Co., 862 F.2d 754, 759 (9th Cir. __________ _______________ 1988) (waiver found where party made conscious decision to delay demand for arbitration while continuing to seek judicial determination of arbitrable claims). There was no error in the district court's finding that Menorah incurred  ____________________ any arbitration proceedings. In the commercial context a forum selection clause, even one for arbitration, confers personal jurisdiction on the courts of the chosen forum. See ___ Unionmutual Stock Life Ins. Co. of Am. v. Beneficial Life ________________________________________ ________________ Ins. Co., 774 F.2d 524, 527 (1st Cir. 1985). ________ -11- 11 expenses as a direct result of INX's dilatory behavior and that that was prejudice enough. INX suggests that the question of arbitrability should be decided in the first instance by the arbitrator. As to that and to INX's argument that the issue of the enforceability of the Israeli judgment must itself be arbitrated, we are guided by First Options of Chicago, Inc. ______________________________ v. Kaplan, 115 S. Ct. 1920 (1995). There, the court was ______ faced with the question of who has the primary power to decide whether parties agreed to arbitrate the merits of their dispute. Id. at 1923. Here, we face a variant of that ___ question -- who has the primary power to decide whether the parties agreed to arbitrate the issue of enforceability of a default judgment following failure to arbitrate under an arbitration clause. That question is appropriate because it is conceivable that parties could decide that such enforceability disputes are subject to arbitration. "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes -- but only those disputes -- that the parties have agreed to submit to arbitration."7 Id. at 1924. ___  ____________________ 7. There is precedent that, as a matter of law, actions to enforce foreign money judgments, even those confirming arbitration awards, are not preempted by the Convention. See ___ Island Territory of Curacao v. Solitron Devices, Inc., 489 ____________________________ _______________________ F.2d 1313, 1319 (2d Cir. 1973), cert. denied, 416 U.S. 986 _____ ______ (1974). We think, however, the better rule here is to follow First Options. See also Mastrobuono v. Shearson Lehman ______________ ___ ____ ___________ ________________ -12- 12 So we apply the First Options rule: "Courts should _____________ not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." Id. (citations omitted). There is nothing in the ___ agreement between INX and Menorah clearly stating that the question of arbitrability of judgments should be decided by an arbitrator. Thequestion is onefor resolution by thecourt. We also agree with the district court that arbitration of the enforceability of the Israeli judgment is not required. "[G]iven the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration," id. at 1925, we do not ___ interpret the silence of the agreement on this point to create a right of arbitration. And if the agreement could be read for such an implication, INX has nevertheless waived its right to arbitrate enforceability of the judgment.  The law does not lend itself to INX's claims and ultimately, the strong policy reasons favoring arbitration and underlying the adoption of the Convention would be undercut, not served, by acceptance of INX's position. Arbitration clauses were not meant to be another weapon in the arsenal for imposing delay and costs in the dispute  ____________________ Hutton, Inc., 115 S. Ct. 1212, 1216 (1995) (issue of whether _____________ arbitrator may award punitive damages "comes down to what the contract has to say about the arbitrability of petitioners' claim for punitive damages").  -13- 13 resolution process. Underlying the policy of enforcing contracts to arbitrate is a belief that where parties can agree to a mutually optimal method and forum for dispute resolution, it serves the interests of efficiency and economy to allow them to do so. Cf. Mitsubishi Motors Corp. v. Soler ___ _______________________ _____ Chrysler-Plymouth, Inc., 473 U.S. 614, 633 (1985); Glass & _______________________ _______ Allied Workers Int'l Union, Local 182B v. Excelsior Foundry _______________________________________ _________________ Co., 56 F.3d 844, 848 (7th Cir. 1995) ("Arbitration is a ___ service sold in a competitive market. The rules adopted by the sellers are presumptively efficient."); see also Steven ___ ____ Shavell, Alternative Dispute Resolution: An Economic __________________________________________________ Analysis, 24 J. Legal Stud. 1, 8-9 (1995) (a central ________ rationale for encouraging parties to contract for their own method of dispute resolution is that they are likely to agree to the most efficient forum to serve their needs).  In the context of international contracts, the opportunities for increasing the cost, time and complexity of resolving disputes are magnified by the presence of multiple possible fora, each with its own different substantive rules, procedural schematas, and legal cultures. This is fertile ground for manipulation and mischief, and acceptance of INX's arguments would lead to the very problems the Convention sought to avoid. Cf. Elizabeth Warren, Bankruptcy ___ __________ Policymaking in an Imperfect World, 92 Mich. L. Rev. 336, ___________________________________ 348-49 (1993) (Differences among legal systems provide -14- 14 incentives for "nonproductive strategic behavior" as debtors attempt to take advantage of opportunities presented in ways that are wasteful and drive up costs.). "The intention behind such [arbitration] clauses, and the reason for judicial enforcement of them, are not to allow or encourage parties to proceed, either simultaneously or sequentially in multiple forums." Cabinetree, 50 F.3d at 390.  __________ Neither efficiency nor economy are served by adopting INX's arguments. The scenario here -- in which a party knowingly opts out of the arbitration for which it has contracted (even if driven by looming insolvency8), sits on its hands while a default judgment is entered against it after service, refuses to pay, requires an enforcement action be filed against it, and only then cries "arbitration" -- undermines both the certainty and predictability which arbitration agreements are meant to foster. Cf. Mitsubishi ___ __________ Motors, 473 U.S. at 631 (Courts should avoid inviting ______ "'unseemly and mutually destructive jockeying by the parties to secure tactical litigation advantages. . . . [It would] damage the fabric of international commerce and trade, and imperil the willingness and ability of businessmen to enter  ____________________ 8. Ordinarily in a dispute between on-going commercial players "reputational" costs serve to soften inclinations to obtain an advantage in a single dispute. But where a party is in financial distress, these reputational checks become far less effective. Cf. Ronald J. Gilson, Value Creation by ___ _________________ Business Lawyers: Legal Skills and Asset Pricing, 94 Yale L. _________________________________________________ J. 239, 289-90 (1984). -15- 15 into international commercial agreements.'") (quoting Scherk, ______ 417 U.S. at 516-17); see also Gilmore v. Shearson/Am. ___ ____ _______ ____________ Express Inc., 811 F.2d 108, 112 (2d Cir. 1987) (parties _____________ should not be permitted to use a delayed assertion of arbitration as a "tactic in a war of attrition designed to make the litigation too expensive for plaintiff"); Allied- _______ Bruce Terminix Cos. v. Dobson, 115 S. Ct. 834, 841 (1995) (in ___________________ ______ interpreting the Federal Arbitration Act court notes that Congress intended to help parties avoid costs and delay). The order remanding this case to the Superior Court of Puerto Rico is also appropriate, under either of two alternative interpretations of the Convention. Section 205 allows removal if the subject matter of the [state] court action "relates to an arbitration agreement . . . falling under the Convention," and it is arguable, though far from certain, that an action to enforce a default judgment where a defense is that the parties agreed to arbitrate is an action "relating to an arbitration agreement." If the case is viewed as being properly removed on the basis of both the plaintiff's enforcement action and the counterclaim, then the finding of waiver ultimately removed the basis for federal jurisdiction.9  ____________________ 9. Menorah argues that this court lacks appellate jurisdiction because the district court's remand order was based on a determination of its lack of subject matter jurisdiction over the removed case and that 28 U.S.C.  1447(d) (1994) bars the review of such a determination. See ___ -16- 16 If, on the other hand, the removal was based on the counterclaim alone, the pendent claim could be remanded. Principles of pendent jurisdiction allowed the district court to exercise its discretion and relinquish jurisdiction over a removed case where all the federal claims were gone and only pendent exequatur claims remained. See 28 U.S.C. 1367(c) ___ (1994); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 348- ______________________ ______ 52, 355 n.11 (1988); Rodriguez v. Comas, 888 F.2d 899, 904 _________ _____ n.20 (1st Cir. 1989). Since this case had been in the Commonwealth's courts for over a year prior to its removal and was on the verge of resolution, the court's exercise of discretion to remand the pendent claims was particularly appropriate. The district court's order remanding the case to the Superior Court of Puerto Rico, so that the exequatur  ____________________ Things Remembered, Inc. v. Petrarca, 64 U.S.L.W. 4035, 4036 ________________________ ________ (U.S. Dec. 5, 1995). Menorah also argues that the district court erred in granting removal of the proceedings in the first place. Since Menorah easily wins an affirmance on the substantive issue of waiver, we decline to decide the jurisdictional issues raised by it. See Norton v. Mathews, ___ ______ _______ 427 U.S. 524, 528-33 (1976) (where merits can be easily resolved in favor of the party challenging jurisdiction, resolution of complex jurisdictional inquiry may be avoided); Lambert v. Kysar, 983 F.2d 1110, 1118 n.11 (1st Cir. 1993); _______ _____ Rhode Island Hosp. Trust Nat'l Bank v. Howard Communications ____________________________________ _____________________ Corp., 980 F.2d 823, 829 (1st Cir. 1992). INX in turn argues _____ that there is no jurisdiction to hear Menorah's argument that the case was improperly removed to federal court. Because we do not reach those arguments, we need not address that jurisdictional issue either. -17- 17 action may proceed, is affirmed. Double costs are awarded to ________ ___________________________ Menorah. _______ -18- 18