

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

**NO. 02-17-00319-CV**

IN RE ALLSTATE VEHICLE AND                                    RELATOR
PROPERTY INSURANCE
COMPANY

----------

ORIGINAL PROCEEDING
TRIAL COURT NO. 2017-000323-3

----------

## OPINION

----------

## I. INTRODUCTION

Because the trial court did not abuse its discretion by finding that Relator

Allstate Vehicle and Property Insurance Company waived its right to invoke its

policy's appraisal provision, and because the policy does not contain a nonwaiver

clause, we will deny Allstate's petition for writ of mandamus.

## II. Factual and Procedural Background

Real Party in Interest Deniedra Jackson made two claims under her homeowner's policy with her insurance company, Allstate, for roof damage sustained on April 1, 2015, and on March 17, 2016. Allstate refused to pay monies on either claim, stating in writing that "[n]o payment was made . . . because the covered damage observed by Allstate . . . did not exceed the policy's $4,077.68 deductible." Jackson filed suit pursuant to the expedited action provisions of Texas Rule of Civil Procedure 169.[1] *See* Tex. R. Civ. P. 169. In accordance with that rule, Jackson affirmatively pleaded that she was seeking recovery of only monetary relief aggregating $100,000 or less. *See* Tex. R. Civ. P. 169(a)(1).

Prior to invoking the appraisal provision set forth in Jackson's policy, Allstate had conducted at least six inspections of Jackson's roof;[2] had removed

---

[1]Jackson's live pleading pleaded claims for breach of contract, Texas Deceptive Trade Practices Act (DTPA) violations, Texas Insurance Code violations, breach of the duty of good faith and fair dealing, fraud and negligent misrepresentation, property damage, and attorney's fees.

[2]Allstate conducted two inspections in response to Jackson's 2015 claim: Warren Barfield provided an April 2015 repair estimate of $2,220.19, and Brandon Adkins provided a May 2015 repair estimate of $2,641.93. During Jackson's deposition, Allstate asked her about an inspection by Christopher Cook on May 10, 2015, but Jackson did not remember that inspection. Adjuster John Kennedy inspected Jackson's home after the 2016 claim and concluded that Jackson's roof had sustained no additional damage but estimated that the repair cost of interior damage was $272.98. Kevin Kiddell and Brett A. Lochridge of United Building Sciences purportedly inspected Jackson's roof twice, preparing reports dated September 19, 2016, and December 8, 2016.

2

the case to federal court—the federal court remanded it to state court three months later;[3] had taken Jackson's deposition; had conducted discovery; had agreed to a February 2018 trial setting;[4] had sought and had obtained an order from the trial court compelling a seventh inspection of Jackson's roof by a new Allstate expert—specifically representing to the trial court that a seventh inspection was needed for Allstate to prepare for the upcoming jury trial;[5] and

Additionally, Jackson's roofing expert, Troy Cruthers, of Titan Roofing also inspected Jackson's roof, and a copy of his report was provided to Allstate.

[3]United States District Judge John McBryde's order remanding the case explains that Allstate "relies upon the insurance policy limits of $693,206 in arguing the amount in controversy is met" and awards Jackson attorney's fees because "she attached a letter she sent to [Allstate] prior to filing her motion for remand pointing out that the amount in controversy is not met. [Allstate] has no response." *Jackson v. Allstate Vehicle & Prop. Ins.*, No. 4:17-CV-153-A, 2017 WL 1327763, at *2 (N.D. Tex. Apr. 10, 2017) (mem. op. & order).

[4]The following exchange occurred on the record at the hearing on Allstate's motion to compel the appraisal, reflecting Allstate's and Jackson's agreed requested trial setting in February 2018:

THE COURT:  Do we have a trial setting?

[JACKSON'S COUNSEL]:  Judge, we sent -- we sent a letter in, and I honestly don't know whatever happened to it.  [Allstate's Counsel] and I were here -- I can't remember which hearing, but we agreed on a date.  You had some conflicts within the parameter within the level one.

[ALLSTATE'S COUNSEL]:  We looked on the court's online docket, though, and it did show the February date that we requested.

[5]The following exchange occurred at the hearing on "Plaintiff's Motion To Compel And Defendant's Special Exceptions To Second Amended Petition And Motion To Compel Inspection":

3

had obtained an extension of time to the expert designation deadline in order to designate the new expert conducting the seventh inspection—Jackson's counsel stated that she had no objection to an extension of Allstate's designation deadline for the new expert "[a]s long as it doesn't postpone the trial setting."

Jackson objected to Allstate's motion to compel a seventh inspection, pointing out that Allstate had already performed six inspections—four by adjusters and two by experts—that it had "over a thousand photographs," that it had "hundreds of measurements," and that "it will be the seventh inspection." She explained that as far as the interior, "[w]e're talking about two spots [on the ceilings], one in the master bedroom and one in the living room."[6] Jackson's

---

[ALLSTATE'S COUNSEL]: . . . [I]f their expert gets to get up there and say that he looked at the property and he's taken measurements, well, our contractor needs to go out there and say, look, I've looked at the property too, I've measured the different rooms, I've looked at the damages[.] . . . [W]ithout us being able to have our expert to look -- prior to trial look at the property, it disadvantages us, and the jury is going to give their expert more credibility because he's seen it firsthand.

THE COURT: So what's wrong with the report by Keddell and Lockridge?

[ALLSTATE'S COUNSEL]: There's nothing wrong with it. . . . [T]here's more issues that come up in litigation that we have to pay attention to and respond to. So we just want to go out there one more time with the people we know will testify at trial to make sure we can cover all our bases.

[6]Jackson testified in her deposition that her claims file produced by Allstate contained hundreds of photographs of her home's interior, her closets, her

4

counsel argued at various points in the hearing that Allstate's request for a seventh inspection had "reached a point of harassment."[7]

The trial court nonetheless signed a July 26, 2017 order granting Allstate's motion to compel another inspection of Jackson's roof by another Allstate expert

---

bedroom, and other areas that "had nothing to do with" the areas of interior damage—two small ceiling spots.

[7]Jackson's counsel argued,

Every time their experts and adjusters go out there, they tear the tarps off [Jackson's roof], they don't put them back on, you tear them off, that causes more damage to the roof because they have to renail them to the property. The last guy didn't even put them back on. I was there. I saw him.

. . . .

They want -- their requests ask for personal property, which she's not claiming personal property. It has reached a point of harassment. They have photographs of every stick of furniture of her house, not claimed. Every closet in her house. She is a professional woman. She has to take off work, cancel appointments with clients. She's a speech pathologist. It's just the seventh time. And every time they go up there[,] it causes more damage to the roof.

. . . .

They had four adjusters and two experts, Lockridge and Keddell[;] they've seen the damage. The damage is now well over two years old. And [prior counsel for Allstate] gave them specific instructions to look at both dates of loss, which would be all the damage. It's included in these reports.

There are photographs of everything, he measured everything, he took pictures of the interior, he took pictures of the exterior. It truly has reached a point of harassing. They've got six people who can testify to the condition of the property.

and granting Allstate's counsel's request for an extension of Allstate's deadlines to designate this new expert. On August 10, 2017, Allstate's new expert Gary Boyd conducted a seventh inspection for Allstate of Jackson's roof and home.

Four days later, on August 14, 2017, Allstate made a settlement offer. Allstate offered $24,000 to Jackson to settle all her claims against Allstate. Allstate's settlement offer provided,

> Allstate offers to pay $24,000 (TWENTY-FOUR THOUSAND AND NO/DOLLARS) in new money in exchange for a complete release of all claims against Defendant Allstate and a dismissal with prejudice of the above referenced suit.

> The offer contained in this letter is made for the sole purpose of amicable resolution and avoiding further expense associated with Plaintiff's lawsuit. The offer is not intended to be and should not be considered by you or your client to be an admission of liability.

Jackson rejected Allstate's $24,000 settlement offer on August 16, 2017.

The next day, on August 17, 2017, Allstate made a written demand for appraisal under the terms of its policy with Jackson. When Jackson refused to participate in the appraisal process, Allstate filed with the trial court motions to compel an appraisal and to abate the case. Jackson filed a response in opposition to Allstate's motion to compel appraisal and abate.

The trial court conducted a September 8, 2017 hearing on Allstate's motion to compel an appraisal and motion to abate. Allstate argued that a point of impasse had been reached on August 16, 2017, when Jackson rejected Allstate's $24,000 settlement offer and that, consequently, Allstate's demand the

6

next day, on August 17, 2017, for an appraisal was timely. Jackson argued that Allstate had waived its right of appraisal by conduct inconsistent with that right— including that Allstate had compelled a seventh inspection, that the point of impasse concerning the amount of loss had occurred over two years earlier, and that she would suffer prejudice from Allstate's attempt to invoke the appraisal clause.[8]

---

[8]Concerning the prejudice to Jackson, her counsel argued,

We have one expert. We [would] have to find another appraiser on short notice. I have tried. One large company conflicted out. I've used them. Allstate has used them. Insurance companies use them. They said we can't do it, conflict.

I tried another roofer. When I said the damage is two years old, it's in litigation, huh-uh, not doing it. He said, who's the carrier, I said Allstate, he said no way. I don't know that we can find an appraiser.

Troy Cruthers [Jackson's expert] has been involved in this since the very beginning. He told them back in 2015 that this roof had to be replaced. The roof has a lot of tarps on it now.

And their new guy [Gary Boyd] who we had a hearing over, we allowed them to go out there, which we all did, now the tarps aren't nailed down properly. What is it? It's a waste of time and money. And they're trying to get out of a breach-of-contract claim by saying appraisal.

. . . .

They've had seven inspections. They could have invoked this from the beginning. . . .

. . . .

We've had discovery disputes. . . .

7

At the hearing on Allstate's motion to compel an appraisal, the trial court asked Allstate,

> So why did we have the whole fight on y'all wanting to go out and inspect it again rather than saying we've reached an impasse and we want to invoke the appraisal?
>
> [ALLSTATE'S COUNSEL]: We hadn't reached the impasse yet. We were continuing to negotiate the settlement negotiations.
>
> THE COURT: No. You were preparing for trial and complaining that there was no way you could go to trial with the expert that you had and you had to have another expert come out because one fellow was only causation. So you weren't talking settlement. You were doing tactical maneuvering in the lawsuit.
>
> ─────────────────────────────────────
>
> We've had to designate experts. . . .
>
> . . . .
>
> And finding an appraiser is problematic. I've had two say no since this -- this motion was filed. . . . They have inspected that roof seven, eight times. An appraisal will take at least three more inspections, one for each appraiser. We know it's going to involve an umpire. The umpire is going to want to see it. So now we're at ten inspections.
>
> And the last, Mr. [B]oyd, his report, he uses the old pictures. That's not what was represented to the Court. He had to go measure. I have also attached portions of their claim file[] of the diagrams and exhibits showing they have photographs and measurements of the roof. You don't need an inspection to figure out how may squares of shingles it's going to take. The appraisal will serve no purpose.
>
> . . . .
>
> The motion or hearing we had for Mr. Boyd to inspect it, why weren't we arguing appraisal then? . . . We're over two years after the fact that they know there was an impasse on the amount of loss, which is the roof.

At the conclusion of the hearing on Allstate's motion to compel an appraisal and to abate the lawsuit pending an appraisal, the learned trial court judge stated his ruling on the record:

> All right. Well, you can't look at it in a vacuum. And I don't think the time in and of itself -- and, in fact, I really think it's almost silly the way they claim when an impasse is met because as somebody who's practiced law 30 years, I know that Friday before Monday trials cases that have been at an impasse for years suddenly get resolved because people know that there's a jury waiting on Monday. In fact, we have them settle Monday morning. So I don't know that there's ever an actual impasse.
>
> But I do think that with all the hoops that we have jumped through and because this was filed as an expedited action case, that there was a waiver. I think we should have -- we didn't need to go out and inspect the property again if we knew that, that we wanted to have a third-party appraisal done, we should have done it then rather than saying we need this to prepare for trial.
>
> So that's -- I'm going to find that they waived the right to invoke the appraisal provision and deny the request for the appraisal.

After the trial court signed an order memorializing its rulings, Allstate filed this original proceeding. Jackson filed a response.[9]

---

[9] Jackson filed "supplemental exhibits" with the trial court after the hearing on Allstate's motion to compel an appraisal and included them in her appendix. Allstate contends that we should not consider these documents. Jackson's response to Allstate's petition for writ of mandamus, however, contains a "Rule 53(j) certification of facts and verification of supplemental record pursuant to Tex. R. App. P. 52.7(b)/Appendix" and verifies that the documents are true and correct copies of the original documents. Jackson is permitted to file her own appendix containing "any other item pertinent to the issues or points presented for review" and also to supplement the mandamus record. *See* Tex. R. App. P. 52.3(k), 52.7(b).

9

## III. STANDARD OF REVIEW

To obtain mandamus relief, a relator generally must show both that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal. *In re Prudential Ins.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or properly apply the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding); *see also In re Gen. Elec. Co.*, 271 S.W.3d 681, 685 (Tex. 2008) (orig. proceeding) ("A court abuses its discretion if its decision is arbitrary, unreasonable, or without reference to guiding principles."). No adequate remedy by appeal exists concerning a trial court's erroneous determination that an appraisal clause has been waived. *See In re Allstate Cty. Mut. Ins.*, 85 S.W.3d 193, 195–96 (Tex. 2002) (orig. proceeding) (holding relator has no adequate remedy on appeal of trial court's abuse of discretion in failing to enforce an appraisal clause). Accordingly, in considering whether mandamus relief is warranted, we need only review a trial court's ruling on a motion to compel an appraisal for an abuse of discretion. *See In re Slavonic Mut. Fire Ins.*, 308 S.W.3d 556, 559 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding), *overruled on other grounds by In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 408, 410–11 (Tex.

10

2011) (orig. proceeding) (overruling *Slavonic* to the extent it granted abatement via mandamus).

## IV. THE LAW CONCERNING APPRAISALS

Appraisal of the amount of loss is intended to take place before suit is filed; the Texas Supreme Court and other courts have held that it is a condition precedent to suit. *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 894 n.42 (Tex. 2009) (collecting cases). However, a party may waive a condition precedent required prior to filing suit, including a right of appraisal of the amount of loss. *See Sun Expl. & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987) (stating that "[a] condition precedent may be waived, *. . .* and the waiver of a condition precedent may be inferred from a party's conduct"); *see also G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 511 (Tex. 2015) ("Waiver—the 'intentional relinquishment of a known right'—can occur either expressly, through a clear repudiation of the right, or impliedly, through conduct."). Implied waiver "is largely a matter of intent, and for . . . [it] to be found through a party's actions, intent must be clearly demonstrated by the surrounding facts and circumstances." *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (citing *Motor Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass'n*, 1 S.W.3d 108, 111 (Tex. 1999)). We may not infer a waiver of a right of appraisal, however, where neither explicit language nor conduct indicates that such was the party's intent. *See Universal Underwriters*, 345 S.W.3d at 408, 410–11. That is,

11

[to] constitute waiver[,] the acts relied on must be such as are reasonably calculated to induce the [insured] to believe that a compliance by him with the terms and requirements of the policy is not desired[] or would be of no effect if performed. The acts relied on must amount to a denial of liability[] or a refusal to pay the loss.

*Id.* at 407 (quoting *Scottish Union & Nat'l Ins. v. Clancy*, 8 S.W. 630, 632 (Tex. 1888)). A waiver of rights under an appraisal provision by conduct occurs only when the party engages in intentional conduct inconsistent with claiming that right. *Id.*

A party's unreasonable delay in invoking an appraisal clause is one aspect, or factor, of a waiver-by-conduct analysis. *See id.* at 408 (stating that "unreasonable delay is a factor in finding waiver"). Whether the party's delay in invoking an appraisal clause is reasonable or unreasonable depends on the time between the "point of impasse" in the parties' negotiations concerning the amount of loss and the time the appraisal clause is invoked. *Id.* (stating that "reasonableness must be measured from the point of impasse"). "Point of impasse" is a mutual understanding that neither party will negotiate further on the amount of loss. *See id.* at 408–10. An impasse is reached when it becomes apparent to both sides that they disagree as to the damages and that further negotiations are futile. *Id.* at 409–10; *see Jai Bhole, Inc. v. Emp'rs Fire Ins.*, No. CIV.A. G-10-522, 2014 WL 50165, at *2 (S.D. Tex. Jan. 7, 2014) (holding point of impasse occurred when insurer chose to stand on its defenses).

12

Other factors or circumstances—in addition to the delay-in-requesting-an-appraisal-after-the-point-of-impasse factor—are pertinent in determining whether a party has waived by conduct its right to an appraisal. *See, e.g.*, *Universal Underwriters*, 345 S.W.3d at 407–08 (recognizing appellate court decisions holding that party waived appraisal clause "were not based solely on the length of delay, but rather on the parties' conduct, as indication of waiver"); *Pounds v. Liberty Lloyds of Tex. Ins.*, 528 S.W.3d 222, 225–28 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (recognizing denial of the claim as a "circumstance[] to consider in determining whether the insurer impliedly waived its appraisal right through inconsistent conduct"); *In re Ooida Risk Retention Grp., Inc.*, 475 S.W.3d 905, 911 (Tex. App.—Fort Worth 2015, orig. proceeding) (recognizing insurer's destruction of insured's fire-damaged truck was not conduct inconsistent with insurer's invocation of appraisal clause when insurer "nevertheless proceeded with the appraisal process"); *see also Sun Expl. & Prod. Co.*, 728 S.W.2d at 37 (examining conduct of accepting and recording oil, gas, and mineral lease and holding such conduct not inconsistent with claiming the right to approve title to the interest conveyed); *Trelltex, Inc. v. Intecx, L.L.C.*, 494 S.W.3d 781, 791 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (holding evidence of surrounding circumstances sufficient to support trial court's conclusion that party's conduct waived its right to collect certain unpaid commissions).

13

The party challenging the validity or enforceability of an appraisal clause based on waiver bears the burden of establishing (1) waiver by conduct of the party seeking appraisal and (2) prejudice to itself (the party claiming waiver of the appraisal clause). *Universal Underwriters*, 345 S.W.3d at 411; *see also In re State Farm Lloyds, Inc.*, 170 S.W.3d 629, 634 (Tex. App.—El Paso 2005, orig. proceeding).

## V. ANALYSIS

Applying the above law to the present facts, we hold that the trial court did not abuse its discretion by determining that Allstate's conduct was inconsistent with the assertion of its appraisal right and constituted waiver of its appraisal right or by determining that Jackson was or would be prejudiced by Allstate's invocation of the appraisal clause.

### A. Allstate's Intentional Conduct Was Inconsistent with Its Right of Appraisal and Unreasonable Delay from Point of Impasse in Demanding Appraisal

As detailed above, the mandamus record before us establishes the following undisputed facts. Jackson filed her lawsuit against Allstate under Texas Rule of Civil Procedure 169 as an expedited action. "The stated legislative intent [of the expedited action procedures] was to promote the prompt, efficient, and cost-effective resolution of certain civil actions."[10] Despite the fact that the expedited actions process is applicable only to suits in which "all

---

[10]*See* Michael Morrison et al., *Expedited Civil Actions in Texas and the U.S.: A Survey of State Procedures and A Guide to Implementing Texas's New Expedited Actions Process*, 65 Baylor L. Rev. 824, 826 (2013).

14

claimants, other than counter-claimants, affirmatively plead that they seek only monetary relief aggregating $100,000 or less[,]" Allstate "relie[d] upon the insurance policy limits of $693,206 in arguing that the amount in controversy [for removal to federal court] is met." *See* Tex. R. Civ. P. 169(a)(1); *Jackson*, 2017 WL 1327763, at *2. Prior to seeking a remand to county court at law number 2, Jackson sent a letter to Allstate pointing out that the amount in controversy for federal removal was not met. When Jackson was nonetheless required to file a motion for remand, Judge McBryde awarded her attorney's fees in the order he signed granting her motion for remand. *See Jackson*, 2017 WL 1327763, at *2. Allstate conducted six inspections of the claimed damage to Jackson's roof; four inspections were performed by Allstate adjusters, and two inspections were performed by Allstate's experts. Allstate agreed to a February 2018 trial setting. Allstate then filed a motion to compel a seventh inspection of Jackson's roof and home by another Allstate expert for the express purpose of having the new expert witness, Gary Boyd, testify at the upcoming jury trial. Allstate represented to the trial court that this seventh inspection was needed because "their [Jackson's] estimator and their contractor is going to have much more credibility in front of the jury if he gets to say, I went there and I looked at it in person, and our contractor didn't." Allstate represented to the trial court that this seventh inspection was needed because "we need a defense of our estimate, so we need someone to look and say, hey, can you see how much in your professional

opinion, in your business it would be to make these repairs and whether we did it right." Based on these representations, and over Jackson's objections to the "harassing" nature of and lack of necessity for this seventh inspection, the trial court granted Allstate's motion. Allstate's counsel then requested an extension of time to designate experts for trial, stating, "One other thing on this . . . I would request that we get an extension for our designations as well." The trial court granted Allstate's request for an extension of time to designate its new expert after he had conducted a seventh inspection of Jackson's roof and after Jackson's counsel agreed to the extension "[a]s long as it doesn't postpone the trial setting."

Based on the facts and circumstances outlined above, we hold that it was within the trial court's discretion to determine that Allstate's conduct clearly constituted intentional conduct inconsistent with its right to invoke the contractual right of an appraisal to determine the amount of loss—in fact, Allstate directly verbally expressed to the trial court Allstate's intent to go to trial despite lack of satisfaction of the appraisal clause condition precedent. *See Universal Underwriters*, 345 S.W.3d at 407 (stating that acts constituting waiver by conduct are acts "reasonably calculated to induce the [insured] to believe that a compliance by him with the terms and requirements of the policy is not desired[] or would be of no effect if performed [and] relied on must amount to a denial of liability[] or a refusal to pay the loss") (quoting *Scottish Union & Nat'l Ins.*, 8 S.W.

16

at 632); *Jai Bhole, Inc.*, 2014 WL 50165, at *2 (explaining that insurer's "lengthy [three-month] delay in demanding an appraisal is indicative of its intent to waive its right to an appraisal, at least until it seemed strategically wise to assert it to limit Plaintiff's potential recovery").

Concerning the waiver-by-conduct factor of the reasonableness-of-the-delay by Allstate in requesting an appraisal from the "point of impasse," the parties assert differing positions on when the point of impasse was reached. The mandamus record before us establishes that on three different occasions—October 28, 2016, March 20, 2017, and May 9, 2017—Jackson demanded payment from Allstate for $19,350.42 (consisting of $14,850.42 to replace her roof; interior damage of $2,000; plus $2,500 in attorney's fees). Between Jackson's second and third demand, Allstate offered to pay $4,000 to settle Jackson's claims against Allstate.

Jackson contends, and we hold, that the point of impasse occurred on May 9, 2017, when Jackson rejected Allstate's $4,000 offer and demanded—for the third time—$19,350.42.[11] Allstate, on the other hand, argues that the point of

---

[11]Jackson's May 9, 2017 letter rejected Allstate's April 25, 2017 settlement offer and explained that

> [p]ursuant to Texas Rule of Civil Procedure 167.2, Plaintiff hereby presents this settlement offer to Allstate. The repair estimate for the damaged roof at the Jackson residence amounts to $14,850.42. The interior damage that has been estimated by Allstate amounts to $2,000.00 is also incorporated into this settlement offer. We believe that the interior damage repairs are grossly underestimated by the

17

impasse concerning the amount of loss occurred on August 16, 2017, when Jackson rejected Allstate's August 14, 2017 settlement offer of $24,000.

Essentially, Allstate argues that despite its litigation conduct it may nonetheless, at any point in the litigation process, trigger a new point of impasse by simply making a settlement offer that is rejected. The trial court understood that Allstate's motion to compel an appraisal presented this exact situation. When Allstate claimed it had not demanded an appraisal prior to its motion to compel a seventh inspection because an impasse had not yet been reached, the trial court stated,

> No. You were preparing for trial and complaining that there was no way you could go to trial with the expert that you had and you had to have another expert come out because one fellow was only causation. So you weren't talking settlement. *You were doing tactical maneuvering in the lawsuit.* [Emphasis added.]

In determining when the point of impasse occurred between Allstate and Jackson, a distinction exists between settlement negotiations as a lawsuit strategy and negotiations concerning the amount of loss.

---

Allstate estimate of $2,000.00. While the attorney's fees incurred by Deniedra Jackson have substantially increased secondary to the removal and discovery responses forwarded to you today, this demand encompasses $2,500.00 in attorney's fees. Therefore, the rule 167 offer made by Deniedra Jackson to Allstate is in the total amount of $19,350.42. This offer will remain open for 14 days.

*Please note that this is the identical value of this claim that was presented to Allstate on October 28, 2016[,] and March 20, 2017.* [Emphasis added.]

18

A lawsuit settlement offer like the one Allstate made to Jackson here—an offer "to pay $24,000 (TWENTY-FOUR THOUSAND AND NO/DOLLARS in new money in exchange for *a complete release of all claims* [breach of contract, DTPA violations, Texas Insurance Code violations, breach of the duty of good faith and fair dealing, fraud and negligent misrepresentation, property damage, and attorney's fees] against Defendant Allstate *and a dismissal with prejudice of the above referenced suit*"—is not a negotiation concerning the "amount of loss." Allstate cannot make a *settlement offer* to pay money in exchange for the dismissal with prejudice of all of Jackson's claims against it and then argue that its settlement offer in fact constituted "good faith negotiations concerning the *amount of loss* suffered by the insured." *See Universal Underwriters*, 345 S.W.3d at 409 (quoting *Tera Indus., Inc. v. Commonwealth Ins. Co. of Am.*, 981 F. Supp. 581, 602 (N.D. Iowa 1997) (emphasis added)). A rejected settlement offer does not create a new "point of impasse concerning the amount of loss" that will make an untimely demand for an appraisal timely, especially here, where Allstate's settlement offer—purportedly masquerading as a point of impasse concerning the amount of loss—was not made until after discovery was closed, after the expert designation deadline had passed, after Jackson had been deposed, after Allstate had agreed to a trial setting, after Allstate had requested and had obtained an extension of the expert designation deadline, and after Allstate had compelled an opposed seventh inspection of the insured's home for

19

the express purpose of trial preparation. *See Jai Bhole, Inc.*, 2014 WL 50165, at *2 ("[Defendant] should not now be permitted to manipulate the facts in such a way as to create and take advantage of a second point of impasse to trigger its ability to demand an appraisal.").

Based on the facts presented on the mandamus record before us, the point of impasse concerning the amount of loss occurred earlier than claimed by Allstate, and no later than May 9, 2017, when Jackson rejected Allstate's $4,000 offer and demanded—for the third time—the sum of $19,350.42. Because Allstate failed to demand an appraisal for more than three months after May 9, 2017, and because Allstate's above-outlined intentional conduct performed in the meantime was inconsistent with its right of appraisal, we hold that the trial court did not abuse its discretion by determining that Allstate had waived its right of appraisal. *See, e.g.*, *In re Gen. Elec. Capital Corp.,* 203 S.W.3d 314, 316 (Tex. 2006) (orig. proceeding) (recognizing waiver may be predicated on intentional conduct inconsistent with claiming a known right); *In re Guideone Nat'l Ins.*, No. 05-15-00981-CV, 2015 WL 5050233, at *2 (Tex. App.—Dallas Aug. 27, 2015, orig. proceeding [mand. dism'd]) (mem. op.) (holding trial court did not abuse its discretion by concluding that GuideOne waived its right to seek appraisal and denying mandamus relief); *see also Jai Bhole, Inc.*, 2014 WL 50165, at *2 (finding waiver by conduct precluded insurer's invocation of appraisal clause); *cf. In re Allstate Vehicle & Prop. Ins. Co.*, No. 09-18-00024-CV, 2018 WL 1003794,

20

at *3–4 (Tex. App.—Beaumont Feb. 22, 2018, orig. proceeding) (holding trial court did abuse its discretion by failing to enforce appraisal provision in the absence of conduct by Allstate inconsistent with Allstate's right to rely on appraisal clause and in light of plaintiff's motion to compel mediation).

## B. Prejudice Shown by Jackson

Allstate next argues that, in any event, the trial court abused its discretion by denying its motion to compel an appraisal because Jackson did not establish prejudice. *See, e.g.*, *Universal Underwriters*, 345 S.W.3d at 411 (explaining that party challenging enforceability of an appraisal clause based on waiver must establish both waiver by conduct and prejudice). The Texas Supreme Court has explained,

> [P]rejudice to a party may arise in any number of ways that demonstrate harm to a party's legal rights or financial position. *Perry Homes v. Cull*, 258 S.W.3d 580, 597 (Tex. 2008) (defining prejudice for purposes of waiver of arbitration as "the inherent unfairness in terms of delay, expense, or damage to a party's legal position" (quoting *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004))); *see also In re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 47 n.5 (1st Cir. 2005) ("[A] party should not be allowed purposefully and unjustifiably to manipulate the exercise of its arbitral rights simply to gain an unfair tactical advantage over the opposing party." (*quoted in Perry Homes*, 258 S.W.3d at 597)); *Menorah Ins. Co., Ltd. v. INX Reinsurance Corp.*, 72 F.3d 218, 222 (1st Cir. 1995) (finding prejudice where party "incurred expenses as a direct result of [opponent's] dilatory behavior").

*Id.* Although "it is difficult to see how prejudice may be shown *simply by a delay in requesting an appraisal* after the point of impasse when an appraisal may be requested by either side," prejudice may arise not only from the delay but also

21

from the requesting party's intentional conduct in the meantime—like conduct triggering additional expenses, conduct constituting inherent unfairness, conduct constituting purposeful manipulation of the appraisal process, and conduct giving the party requesting appraisal an unfair tactical advantage. *See id.* (emphasis added) (citing cases so holding in the arbitration context).

Jackson argues that she established that she did and would suffer prejudice from Allstate's untimely August 17, 2017 invocation of the appraisal clause after the May 9, 2017 point of impasse based on Allstate's intentional conduct that constituted purposeful manipulation of the appraisal process—as found by the trial court, that constituted inherent unfairness, that triggered additional expenses, and that gave Allstate (as the party requesting an appraisal) an unfair tactical advantage. *See id.* Specifically, Jackson argues that she established prejudice from the following:

- she would incur additional expense in participating in an appraisal;

- she could not use her only expert, Troy Cruthers, as an appraiser because she had selected him to replace her roof;

- she would be unable to obtain an appraiser—her counsel told the trial court he had called two appraisers after Allstate's motion to compel appraisal had been filed, and both had said "no"—because of the age of the roof damage and the conflicts of interest with Allstate that many potential appraisers have;

- the roof damage to her home was over two and a half years old when Allstate demanded an appraisal, and storms during those two and a half years had added to her roof damage, making it impossible for an appraiser to now determine what damage was caused by which storm;

22

• she was preparing for trial, and she had incurred trial expenses and additional attorney's fees preparing for trial;

• Allstate had compelled a seventh inspection of Jackson's roof just a few weeks earlier over Jackson's objections that a seventh inspection constituted harassment and was unnecessary by repeatedly representing to the trial court that a seventh inspection was necessary for Allstate to use in the upcoming jury trial;

• an appraisal will take weeks or months to accomplish, further delaying resolution of this matter, which Jackson's counsel represented could be tried in one or two days; and

• an appraisal would, obviously, postpone the agreed-to trial setting.

This evidence in the mandamus record establishes that Jackson was and would be prejudiced by Allstate's untimely invocation of the appraisal clause. Jackson demonstrated the inherent unfairness in terms of delay, expense, and damage to her position in both the appraisal context and the trial-by-jury context that would occur if the trial court permitted Allstate to invoke its right of appraisal despite the unreasonable delay in Allstate's invocation of the appraisal clause from the point of impasse when the delay is viewed in light of Allstate's intentional conduct in the meantime, that is, conduct that was inconsistent with Allstate's right of appraisal. *See id.* (citing *Perry Homes*, 258 S.W.3d at 597); *cf. In re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 47 (1st Cir. 2005) ("Although mere delay normally will not be sufficient to establish prejudice . . . a party should not be allowed purposefully and unjustifiably to manipulate the exercise of its arbitral rights simply to gain an unfair tactical advantage over the opposing party.").

## C. Allstate Waived Its Right of Appraisal

Based on Allstate's almost three-month delay from the point of impasse in invoking its right of appraisal; based on Allstate's intentional conduct and verbal statements to the trial court inconsistent with its right of appraisal, in light of the prejudice demonstrated by Jackson that she would suffer in both the appraisal process and the litigation process if Allstate were permitted to proceed with its untimely invocation of its appraisal right; and based on the trial court's inherent authority to control its own docket,[12] we hold that the trial court did not abuse its discretion by denying Allstate's motion to compel an appraisal. *See Guideone Nat'l Ins.*, 2015 WL 5050233, at \*2.

## D. No Nonwaiver Clause Exists

Lastly, Allstate argues that the following endorsement constitutes a contractual "nonwaiver" clause barring the trial court from finding waiver by conduct:

[12]*Cf., e.g.*, *In re Marriage of Harrison*, No. 14-15-00430-CV, 2018 WL 894442, at \*28 (Tex. App.—Houston [14th Dist.] Feb. 15, 2018, no pet. h.) ("The judge, not the litigant, controls the trial court docket."); *El-Khalidi v. Arabian Am. Dev. Co.*, No. 09-16-00400-CV, 2017 WL 5179967, at \*6 (Tex. App.—Beaumont Nov. 9, 2017, pet. denied) (mem. op.) ("Given the trial court's inherent right to control its docket, . . . we hold the trial court did not abuse its discretion by refusing to accommodate [appellant's] request that his deposition should be further delayed."); *In re State ex rel. Skurka*, 512 S.W.3d 444, 452 (Tex. App.—Corpus Christi 2016, orig. proceeding) (stating that the control of the business of the court is vested in the sound discretion of the trial judge and that "[s]pecifically, the 'trial court is vested with broad discretion to manage and control its docket in order to promote the orderly and efficient administration of justice while protecting the statutory and constitutional rights of all persons who come before the court'").

**Coverage Changes**

When **we** broaden coverage during the policy period without charge, **you** have the new features if **you** have the coverage to which they apply. **Otherwise, the policy can be changed only by endorsement.**

This is simply not a nonwaiver clause. *See, e.g., Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 481 (Tex. 2017);[13] *EWB-I, LLC v. PlazAmericas Mall Tex., LLC*, 527 S.W.3d 447, 468 (Tex. App.—Houston [1st Dist.] 2017, pet. denied);[14] *In re GuideOne Nat'l Ins.*, No. 07-15-00281-CV, 2015 WL 5766496, at

---

[13]In *Shields Ltd. P'ship*, the nonwaiver provision provided,

All waivers must be in writing and signed by the waiving party. Landlord's failure to enforce any provisions of this Lease or its acceptance of late installments of Rent shall not be a waiver and shall not estop Landlord from enforcing that provision or any other provision of this Lease in the future.

526 S.W.3d at 481.

[14]In *EWB-I, LLC*, the nonwaiver provision provided,

No delay or omission by any Party hereto in exercising any right or power *accruing upon the non-compliance or failure of performance by any other Party* under the provisions of this Agreement shall impair any such right or power or be construed to be a waiver thereof. A waiver by any Party of any of the covenants, conditions[,] or agreements herein *to be performed by any other Party* shall not be construed to be a waiver of any subsequent breach or of any other covenant, condition[,] or agreement herein contained.

527 S.W.3d at 468.

25

*2 (Tex. App.—Amarillo Sept. 29, 2015, orig. proceeding) (mem. op.).[15]  Unlike the nonwaiver provisions in *Shields Ltd. P'ship*; *EWB-I, LLC*; *In re GuideOne Nat'l Ins.*; or other provisions purportedly constituting nonwaiver provisions, this provision does not restrict or limit in any way Allstate's or Jackson's ability to waive any provision of Jackson's insurance policy with Allstate.  It does not require waivers to be in writing and signed by the waiving party.  *Cf. Shields Ltd. P'ship*, 526 S.W.3d at 481.  It does not provide that any delay or omission in exercising a contractual right shall not be construed as a waiver of that right.  *Cf. EWB-I, LLC*, 527 S.W.3d at 468.  It does not provide that policy terms can be waived only by endorsement.  *Cf. GuideOne Nat'l Ins.*, 2015 WL 5766496, at *2.  Thus, we hold that the clause relied on by Allstate as precluding the trial court's finding that Allstate waived its right of appraisal does not constitute a nonwaiver clause and did not preclude the trial court from finding a waiver of appraisal by Allstate.[16]

## VI. CONCLUSION

Having held that the trial court did not abuse its discretion by factually finding and legally concluding that Allstate had waived its contractual right to

---

[15]In *GuideOne Nat'l Ins.*, the nonwaiver provision provided that "[t]his policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy."  2015 WL 5766496, at *2.

[16]Because we hold that the trial court did not abuse its discretion by denying Allstate's motion to compel an appraisal, we need not reach Allstate's argument related to its motion to abate pending the outcome of the appraisal because it is moot.

26

invoke the appraisal clause in Jackson's policy as a condition precedent to her filing suit against Allstate and that no nonwaiver clause exists in Allstate's policy with Jackson, we overrule Allstate's sole issue and deny Allstate's petition for writ of mandamus. Our disposition of this original proceeding serves to lift the stay previously granted by this court. *See* Tex. R. App. P. 52.10(b).

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: WALKER, MEIER, and GABRIEL, JJ.

GABRIEL, J., filed a concurring opinion.

DELIVERED: May 3, 2018